STATE of Iowa, Appellee,

v.

Chareun SEEVANHSA, Appellant.

No. 91–1105.

Court of Appeals of Iowa.

Nov. 30, 1992.

Linda Del Gallo, State Appellate Defender, and Kevin Cmelik, Asst. State Appellate Defender, for appellant.

Bonnie J. Campbell, Atty. Gen., Roxann M. Ryan, Deputy Atty. Gen., Thomas S. Mullin, County Atty., and Carol Chase, Asst. County Atty., for appellee.

Heard by OXBERGER, C.J., and SCHLEGEL and SACKETT, JJ., but decided en banc.

OXBERGER, Chief Justice.

Chareun Seevanhsa appeals his conviction, following a jury trial, of incest in violation of Iowa Code section 726.2 (1987). He contends the district court erred in: (1) admitting expert testimony concerning the child sexual abuse accommodation syndrome, and (2) admitting testimony of prior sexual acts.

I. Background Facts and Proceedings

The State charged Seevanhsa with three counts of third-degree sexual abuse and one count of incest. The charges arose from four alleged incidents of incestuous behavior with his daughter, B.S., occurring between late 1987 and May 13, 1990. B.S., age seventeen, had told her high school counselor that her father had been sexually and physically abusing her for eleven years.

Prior to trial, the district court sustained motions in limine filed by both parties. Seevanhsa's jury trial commenced on April 30, 1991. The State elicited testimony from a child protective center coordinator, Katie Boley, regarding child sexual abuse accom-modation syndrome (CSAAS). Seevanhsa objected to the State's presentation of such testimony during the State's case-in-chief on the basis it impermissibly bolstered the complainant's testimony. The State made an offer of proof, and the district court overruled the objection, ruling the testimony was admissible to rebut the defendant's claim during the cross-examination of the victim that B.S. had fabricated the story to escape from her traditional Laotian up-bringing. After testifying she had inter-viewed B.S., Ms. Boley explained the char-acteristics of the syndrome.

Seevanhsa also objected to B.S.'s testi-mony regarding alleged incestuous acts pri-or to the crimes charged. The district court overruled these objections. The jury acquitted Seevanhsa on the sexual abuse charges and convicted him on the incest charge. The district court denied Seevan-hsa's posttrial motions. The district court entered judgment on June 27, 1991, and sentenced Seevanhsa to an indeterminate prison term not to exceed five years.

Seevanhsa appeals.

We review for an abuse of discretion. In order to show an abuse of discretion, one generally must show that the court exer-cised its discretion "on grounds or for rea-sons clearly untenable or to an extent clearly unreasonable." *State v. Blackwell*, 238 N.W.2d 131, 138 (Iowa 1976) (quoting *State v. Burnor*, 132 Vt. 603, 326 A.2d 138, 140 (1974)).

II. Admissibility of Expert Testimony Re-garding Child Sexual Abuse Accommo-dation Syndrome

Seevanhsa contends the district court erred in allowing Katie Boley's testi-mony regarding the CSAAS. He maintains the State presented Boley's testimony for the purpose of improperly bolstering B.S.'s credibility. He points out Boley's testimo-ny coincided with many of the specifics of B.S.'s testimony.

In view of the increasing number of re-ported cases of child sexual abuse and the accompanying perception that child sexual abuse is a major social problem, prosecu-tors have increasingly sought to use expert

opinion testimony concerning the psychology of the child complainant in their efforts to obtain convictions. *See* David McCord, *Expert Psychological Testimony About Child Complainants in Sexual Abuse Prosecutions: A Foray into the Admissibility of Novel Psychological Evidence,* 77 J.Crim.L. & Criminology, 1 (1986).

Numerous courts have wrestled with whether and under what circumstances expert testimony regarding CSAAS may be admitted. Our discussion necessarily begins with a discussion of the rules governing admissibility of expert testimony. Iowa Rule of Evidence 702, adopted from Federal Rule of Evidence 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

The advisory note to Federal Rule of Evidence 702 provides guidance in applying this evidentiary rule and states:

> Whether the situation is a proper one for the use of expert testimony is to be determined on the basis of assisting the trier. "There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained lay[person] would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute." (citations omitted).

The question of whether expert testimony regarding CSAAS will assist the trier of fact was recently addressed by the Michigan Supreme Court:

> Advocates of the use of expert testimony in [child] sexual abuse cases suggest that without expert testimony jurors cannot properly assess an individual's reaction to a sexual assault.[1] A victim's reactions to a sexual assault, especially if the assailant is a family member, are unique to the particular crime. This uniqueness puts the evidence beyond the jury's ability to properly evaluate the facts in issue without the assistance of expert testimony.[2] In addition, experts generally agree that reactions of sexual assault victims vary significantly from those of a victim of the average crime.[3] The findings of professional research suggest that there are many seemingly inconsistent responses to the trauma of the incident which require some form of explanation.

*People v. Beckley,* 434 Mich. 691, 456 N.W.2d 391, 401–402 (1990) (footnotes included).

■ Additionally, it is generally accepted that the jury need not be wholly ignorant of the subject matter of the opinion in order to justify its admission. *See People v. McAlpin,* 53 Cal.3d 1289, 283 Cal.Rptr. 382, 387, 812 P.2d 563, 568 (1991).

Finally, our supreme court, in *State v. Myers,* 382 N.W.2d 91, 96–97 (Iowa 1986), reviewed the law in other jurisdictions regarding the admissibility of expert testimo-

---

1. "The American Psychiatric Association, in its definition of posttraumatic stress disorder has stated that understanding the development of characteristic symptoms following a psychologically distressing event ... is outside the range of usual human experience.... Diagnostic & Statistical Manual of Mental Disorders § 309.89, n. 15 (3d rev. ed.) (1987). Rape and assault are included within the list of stressors which could produce posttraumatic stress disorder." *People v. Beckley,* 434 Mich. 691, 456 N.W.2d 391, 401 n. 33 (1990).

2. "In *State v. Middleton* [294 Or. 427], 657 P.2d 1215 (Or.1983), the Oregon Supreme Court relied on the responses of the jury pool during

voir dire to support its conclusion that the average individual is unfamiliar with the emotional trauma associated with sexual assault..." *Id.,* 456 N.W.2d at 401–02 n. 34.

3. "Generally, courts draw comparisons to crimes against property. In *State v. Myers,* 359 N.W.2d 604, 610 (Minn.1984), the court reasoned that jurors have the competence within their common experience to test the credibility of witnesses for 'most crimes'. For example, '[i]f the victim of a burglary failed to report the crime promptly, a jury would have good reason to doubt that person's credibility.'"

ny in child sexual abuse cases. The court noted:

> In summary, it seems that experts will be allowed to express opinions on matters that explain relevant mental and psychological symptoms present in sexually abused children. . . .

*Id.* at 97.

We hold expert testimony regarding CSAAS may, in some instances, assist the trier of fact to both understand the evidence and to determine facts in issue.

The question then becomes under what circumstances and with what limitations may expert testimony regarding CSAAS be admitted.

■ Some jurisdictions allow CSAAS experts to testify regarding the credibility of witnesses. *See, e.g., State v. Kim,* 64 Haw. 598, 645 P.2d 1330, 1333 (1982). However, this is clearly impermissible in our jurisdiction. *See State v. Myers,* 382 N.W.2d 91, 97 (Iowa 1986).

Other jurisdictions allow CSAAS experts to testify that the child's symptoms are consistent with those of a sexually abused child, even though the indirect effect of such testimony bolsters the complainant's credibility. In *State v. Myers,* 359 N.W.2d 604, 609 (Minn.1984), the court held admissible expert testimony regarding symptoms of CSAAS present in the alleged victim in that case. While the court acknowledged that helpful, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, it held testimony describing the syndrome and the symptoms present in the victim helped the jury understand the evidence and determine facts in issue. *Id. See also State v. Middleton,* 294 Or. 427, 657 P.2d 1215, 1218–1220 (1983) (testimony regarding behavior as consistent with syndrome elements held not to invade the province of the jury).

Some courts allow expert testimony regarding CSAAS only to explain to the jury conduct which might otherwise appear unusual or inconsistent. In *State v. Moran,* 151 Ariz. 378, 728 P.2d 248, 254 (1986), a case factually similar to the case before us,

expert testimony was allowed to rebut claims of the victim's motivation to lie. The court explained:

> [The] defendant claimed that the victim's accusations were prompted by anger over discipline imposed by her parents. Testimony providing the jury with an alternative explanation for the victim's anger was admissible to assist the jury in determining what had motivated the initial charges against defendant.

*Id. See also Wheat v. State,* 527 A.2d 269, 273–274 (Del.Supr.Ct.1987) (expert may testify in order to address issues of delayed reporting or recantation but cannot testify regarding victim's credibility in terms of statistical probabilities); *State v. Reser,* 244 Kan. 306, 767 P.2d 1277, 1279 (1989) (expert's testimony served to rebut defense claim of fabrication).

■ In the case before us, the expert limited her discussion of CSAAS to generalities. She did not testify she believed the complainant was credible nor did she testify that she believed the complainant had been sexually abused. She limited her discussion to an explanation of the symptoms common to children who have been sexually abused.

■ The defendant complains this testimony impermissibly bolsters the complainant's testimony. Clearly her testimony in no way directly bolsters B.S.'s testimony, since the expert never gave an opinion as to B.S.'s credibility. Whatever indirect effect the expert's testimony may have to bolster B.S.'s testimony is not problematic here; the defendant placed B.S.'s credibility in question when he alleged she fabricated sexual abuse allegations in an attempt to escape her father's insistence upon a strict Laotian upbringing. Once the witness's credibility is attacked, expert testimony is admissible to rehabilitate the witness. *State v. Dodson,* 452 N.W.2d 610, 612 (Iowa App.1989).

Boley testified on matters which explained relevant mental and psychological symptoms present in sexually abused children. We hold Boley's testimony assisted the trier of fact in both understanding the evidence and determining the facts in issue.

We hold the trial court did not abuse its discretion in allowing the expert's testimony.

III. Admissibility of Evidence of Other Acts

█ Next, Seevanhsa contends the trial court abused its discretion in admitting the complainant's testimony regarding the defendant's prior sexual acts with her. Seevanhsa claims the prior sexual acts which the State successfully presented to the jury were both remote in time and insufficiently established by clear proof to warrant admission.

█ Ordinarily, evidence of other crimes, wrongs, or acts is not admissible if it is offered to show only that the defendant is a bad person and to show he acted in conformity with past incidents. See Iowa R.Evid. 404(b). We have previously recognized a special exception to this rule in sex abuse cases. This exception permits the use of prior acts "to show a passion or propensity for illicit sexual relations with the particular person concerned in the crime on trial." State v. Tharp, 372 N.W.2d 280, 281 (Iowa App.1985) (citing State v. Spaulding, 313 N.W.2d 878, 880 (Iowa 1981)).

"Remoteness in time of the prior acts . . . is a factor to be considered, but not the only factor. If the evidence is highly probative, it may be admitted even though the acts were remote in time." Tharp, 372 N.W.2d at 281 (citing State v. Spargo, 364 N.W.2d 203, 209 (Iowa 1985)). In the present case, the complainant alleged Seevanhsa had been sexually abusing her throughout a period of approximately ten years. As we stated in Tharp, the fact that the prior acts were remote in time goes to the weight of the evidence, not to its admissibility. Id. at 281–282. The trial court did not abuse its discretion in allowing the complainant's testimony notwithstanding the remoteness in time of the acts to which the testimony pertained.

█ Seevanhsa further argues the prior acts were insufficiently established by clear proof to warrant admission. Having thoroughly reviewed the complainant's tes-

timony, we do not believe the "clear proof" rule precludes admission of the prior acts testimony. "Commission of prior acts need not be established beyond a reasonable doubt. The purpose of the rule is to prevent the jury from engaging in speculation or drawing inferences based on mere suspicion." Spargo, 364 N.W.2d at 209. "Adding a corroboration requirement to our clear proof rule is not necessary to accomplish the purposes behind the rule when a victim's testimony, standing alone, satisfies the requirement of clear proof." State v. Jones, 464 N.W.2d 241, 243 (Iowa 1990).

Here, the complainant's testimony was sufficiently credible and detailed to inform the jury about the prior acts of sexual abuse. The jury was not put in the position of having to speculate about the prior acts based on mere suspicion. See Id. at 243. Accordingly, the trial court did not abuse its discretion in permitting the complainant's testimony regarding the prior sexual abuse acts.

AFFIRMED.

All Judges concur except SACKETT, J., who specially concurs, and SCHLEGEL, J., who dissents.

SACKETT, Justice (specially concurring).

I concur with the majority decision to affirm. I agree with the majority that it was not error to admit evidence of the sexual abuse accommodation syndrome here where the defendant put in issue the question of whether the victim fabricated her testimony and the evidence of the sexual abuse accommodation syndrome served to rehabilitate her testimony.

I write separately because I want to make it clear in agreeing with the majority that I am not sanctioning the use of evidence of child sexual abuse accommodation syndrome for purposes the evidence is not intended to be and was not intended to be used.

Child sexual abuse accommodation syndrome first came from an article titled, "The Child Sexual Abuse Accommodation Syndrome" published in 1983 and written by Dr. Roland Summit. Summit described

five characteristics commonly observed in sexually abused children: (1) secrecy, (2) helplessness, (3) entrapment and accommodation, (4) delayed, conflicted, and unconvincing disclosure, and (5) retraction. The accommodation syndrome was never intended to detect sexual abuse. Rather, it *assumes* the presence of abuse, and explains the child's reaction to it. The accommodation syndrome is not probative of abuse. Additionally, accommodation does not have established reliability. The place of the accommodation syndrome in the courtroom is only to explain delayed reporting of abuse, recantation of allegation of abuse, and denial that abuse has occurred. It is only for these rehabilitative functions that the accommodation syndrome serves a useful forensic function. *See* John E.B. Myers et al., *Expert Testimony in Child Sexual Abuse Litigation*, 68 Neb.L.Rev. 68 (1989).

The problems with this type of evidence is it may incorrectly be used by a fact-finder as evidence of abuse. *State v. Dodson*, 452 N.W.2d 610, 612 (Iowa App.1989). There is a very fine line between an opinion that is helpful to a jury and an opinion that merely conveys a conclusion concerning the defendant's guilt. *See State v. Myers*, 382 N.W.2d 91, 98 (Iowa 1986); *State v. Horton III*, 231 N.W.2d 36, 38 (Iowa 1975).

I recognize, as does the majority, the increased number of cases involving child sexual abuse coming before our courts. I also am aware of the awesome responsibility we all have to protect children from this treatment and punish offenders. I also recognize the responsibility to determine the truth of allegations, to assure safety for children, and to assure only the guilty are convicted places a considerable burden on the fact-finder. Consequently, there is a temptation to seek the help of persons who hold themselves out as experts in child sexual abuse diagnosis and use their opinions in whole or in part to allegedly assist the fact-finder in arriving at the truth.

However, before any expert's evidence is used to assist a fact-finder in arriving at the truth it should be clearly shown the expert provides reliable data. A recent clinical study of expert assessments of children's allegations of sexual abuse by Thomas M. Horner, a Clinical Assistant Professor of Psychology and Director of the Infancy and Early Childhood Clinic in the Department of Psychiatry at the University of Michigan School of Medicine and Melvin J. Guyer, a Professor of Social Psychology in the Department of Psychiatry at the University of Michigan School of Medicine, who holds a Ph.D in psychology and a J.D. from the University of Michigan clarifies a large range of erroneous inference by clinical experts and cautions courts against indiscriminate use of experts in cases of alleged child sexual abuse. *See* Thomas M. Horner & Melvin J. Guyer, *Prediction, Prevention and Clinical Expertise in Child Custody Cases in Which Allegations of Child Sexual Abuse Have Been Made*, XXV Family Law Quarterly, 383 (Fall 1991). They suggest:

> For the most part, when evidence of sexual abuse exists, it does not require a mental health expert to draw the appropriate inferences, and when evidence does not exist, or is ambiguous, opinions offered by an expert only bias the judicial decisionmaking away from the presumptions that are operative in the justice system, namely, that duly elected or appointed persons, (i.e. judges and juries) should make decisions affecting the sociolegal conditions of individuals and families. As several commentators have argued, experts sometimes intrude on, and therefore detract from, the institutionalized authority of established judicial matters. This is especially so when they offer opinions that preempt the ultimate fact-finding authority and responsibilities of the judge or jury. It has become increasingly evident that experts frequently adopt an activist stance in their testimony, seeking to maneuver the court into a frame of mind that overestimates the likelihood that child sexual abuse has occurred, in cases where there are ambiguities or contradictions.

Thomas M. Horner & Melvin J. Guyer, *Prediction, Prevention, and Clinical Expertise in Child Custody Cases in Which*

*Allegations of Child Sexual Abuse Have Been Made,* XXV Family Law Quarterly, 402–03 (Fall 1991).

The accommodation syndrome has not been generally accepted in the relevant scientific community as a means of detecting abuse. *See People v. Bowker,* 203 Cal. App.3d 385, 249 Cal.Rptr. 886 (1988); *Lantrip v. Commonwealth,* 713 S.W.2d 816 (Ky.1986). The other serious problem with the accommodation syndrome is that in some instances it seeks to show why the behavior of an alleged abused child is the same as, not different from, the behavior of a nonabused child. The testimony may seek to explain why the child acted normally. *See Dodson,* 452 N.W.2d at 612. The fact that a child acted normally is not evidence of abuse.

SCHLEGEL, Judge (dissenting).

I respectfully dissent.

Given the significant probability for prejudice to a criminal defendant in a child sexual abuse case if evidence concerning the child sexual abuse accommodation syndrome (CSAAS) is improperly admitted, I would limit the admissibility of this evidence to dispelling misconceptions concerning how children react to sexual abuse which result specifically from defense counsel's attempts to intimate to the jury that the victim's actions are inconsistent with having been abused. The court in *People v. Bowker,* 203 Cal.App.3d 385, 394, 249 Cal.Rptr. 886, 891–92 (1988), detailed the following examples:

> [W]here a child delays a significant period of time before reporting an incident or pattern of abuse, an expert could testify that such delayed reporting is not inconsistent with the secretive environment often created by an abuser who occupies a position of trust. Where an alleged victim recants his story in whole or in part, a psychologist could testify on the basis of past research that such behavior is not an uncommon response for an abused child who is seeking to remove himself or herself from the pressure created by police investigations and subsequent court proceedings.

*See also State v. Dodson,* 452 N.W.2d 610, 612 (Iowa App.1989) (expert opinion testimony may be admissible if offered to rebut the apparent misconception that the complainant is not fearful of the perpetrator following sexual abuse).

CSAAS evidence should be admissible in this limited context solely for the rehabilitative purpose of demonstrating to the jury that defense counsel's intimations concerning the victim's actions constitute misconceptions concerning how children react to abuse. In this way, the CSAAS evidence is offered to the jury as a basis for concluding that the particular behavior which defense counsel has intimated as inconsistent with the occurrence of abuse is not inconsistent at all.

To extend the admissibility of CSAAS evidence beyond this limited, rehabilitative function, as the majority has done in this case, exaggerates the limited utility that CSAAS evidence has in assisting the trier of fact to *accurately* determine facts in issue. *See Bowker,* 203 Cal.App.3d at 395, 249 Cal.Rptr. at 892. The syndrome assumes the child is a "legitimate victim" of sexual abuse. Its purpose is to explain why such victims exhibit *specific types* of behavior so as to assist psychology professionals in providing therapy and treatment. *See* Summit, *The Child Sexual Abuse Accommodation Syndrome,* 7 Int'l J. Child Abuse & Neglect 177, 179–80 (1983).

The value of CSAAS evidence is that it seeks to show why the behavior of the alleged abused child is the same as, not different from, the behavior of a nonabused child. *See id.* at 179–80; *see also Dodson,* 452 N.W.2d at 612. Accordingly, in order for the syndrome evidence to be of reliable scientific assistance in a court of law, the jury must first be confronted with a situation in which defense counsel is suggesting the victim's behavior is inconsistent with having been sexually abused.

In this way, and only in this way, does defense counsel create a "myth" or "misconception" necessitating the State's use of CSAAS evidence to disabuse the jury of the misconception so that the jury may evaluate the evidence free of the constraints of

popular myths. More importantly, only in this specific situation is CSAAS evidence *reliable* in providing the jury with "relevant and accurate information regarding 'recent findings of professional research on the subject of a victim's reaction to [child abuse]' without the danger that such information will be misapplied as a predictive index by the jury." *Bowker*, 203 Cal. App.3d at 394, 249 Cal.Rptr. at 891 (citing *People v. Bledsoe*, 36 Cal.3d 236, 247, 681 P.2d 291, 302, 203 Cal.Rptr. 450, 461 (1984)).

To extend the legal admissibility of CSAAS evidence beyond the purpose for which the scientific community relies upon CSAAS, as the majority has done here, improperly exaggerates the ability of this scientific evidence to assist the jury in *accurately* determining facts in evidence. The obvious result is unfair, unnecessary prejudice to the defendant.

The *Bowker* court has keenly noted:

It is one thing to say that child abuse victims often exhibit a certain characteristic or that a particular behavior is not inconsistent with a child having been molested. It is quite another to conclude that where a child meets certain criteria, we can predict with a reasonable degree of certainty that he or she has been abused. The former may be appropriate in some circumstances; the latter clearly is not.

While the impropriety in the latter situation is clearest where the expert's testimony applies the CSAAS theory to the facts of the case and concludes that the victim was molested, it is also present where the expert gives "general" testimony describing the components of the syndrome in such a way as to allow the jury to apply the syndrome to the facts of the case and conclude the child was sexually abused. *In fact, there may be more danger where the application is left to the jury because the jurors' education and training may not have sensitized them to the dangers of drawing predictive conclusions.*

*Bowker*, 203 Cal.App.3d at 394, 249 Cal. Rptr. at 891. (Emphasis added.)

This danger is alarmingly apparent in the present case. Here, the majority's decision turns on its contention that:

[The expert] did not testify she believed the complainant was credible nor did she testify that she believed the complainant had been sexually abused. She limited her discussion to an explanation of the symptoms common to children who have been sexually abused.

An examination of the record clearly indicates otherwise. The evidence in the record reveals the State and its expert, Katie Boley, attempted to personalize the expert opinions and conclusions to refer specifically to the complainant in this case. After testifying that she had personally interviewed the complainant, Boley intentionally chose examples illustrating her testimony concerning the stages of CSAAS which centered around the complainant's specific behavior and the specific circumstances surrounding the complainant's experience.

During her discussion of stage one of the syndrome, secrecy, the prosecutor asked Boley if receiving expensive gifts would be viewed by the child as a reason to keep the secret. Boley responded, "[i]t could be viewed that way or it could be viewed that the father is—or the mother—is sorry for what they have done, so they're trying to make it up to them. So he really is sorry— he or she is sorry—for what he's doing to me so he's trying to apologize or make it better by giving me these gifts."

This testimony followed an extensive examination with demonstrative evidence during the State's direct examination of the complainant during which the State emphasized the defendant (complainant's father) had given the complainant gifts in relationship to having sex with him. The complainant testified extensively that if she behaved or listened to the defendant, she would receive many valuable gifts, including a $500 gold necklace, a $2,500 gold necklace (shown to the jury), a radio, a television, and use of the defendant's car. The State had made it clear to the jury the gifts would be repossessed by the defendant if the complainant refused his sexual requests. This extensive evidence was par-

aded before the jury prior to the expert's testimony.

Another glaring example of the attempts to conform the expert CSAAS testimony to the complainant's specific testimony occurred during the expert's discussion of stages two and three of the syndrome, helplessness and entrapment. The following exchange took place between the prosecutor and the expert:

Q: Okay. And would this be like if a child during a sex act upon her would just lay there and close her eyes and feel nothing? A: Yes, that's their attempt not to be experiencing what is happening to them.

Q: And would this be—Another part of that would be when they—when a child would say something like, I don't remember, so they're blocking it out? A: That could be two things. It could be disassociation but it also could be that the child practices not to remember. And so when they practice that not remembering, that's part of repression rather than, you know, which, you know, both tie together, but I don't remember could be depression. And I'm not going to remember this, I don't want to remember this because I don't feel like I feel when I remember this.

These questions and answers literally echoed the complainant's own testimony regarding these same areas of examination; the jury had heard the complainant's testimony prior to the expert's testimony. The record is replete with numerous similar attempts to tailor the expert CSAAS testimony to fit comfortably around the complainant's individual experience.

The majority has permitted the State to introduce extensive prejudicial CSAAS evidence despite the resounding fact that the defendant never intimated to the jury that the complainant's particular behavior was inconsistent with having been sexually abused. Defense counsel did not intimate any "myths" as to how child victims react to abuse. Defense counsel did not intimate any "misconceptions" as to how child victims react to abuse. The defendant's cross-examination of the complainant was limited solely to complainant's alleged dislike for her father's ethnicity. Questions were posed to the complainant to elicit her desire to enjoy an American upbringing rather than an upbringing based upon the strict Lao traditions and values. In this way, defense counsel attempted to persuade the jury the child had fabricated the sexual abuse allegations in an attempt to escape her father and his insistence upon the traditional Lao-based upbringing.

Thus, defense counsel merely suggested to the jury that the complainant may have had a motive to fabricate the sexual abuse allegations against her father. This situation is entirely different than the situation where defense counsel intimates to the jury that the complainant's behavior is inconsistent with the behavior a lay person would normally expect from a child who has been sexually abused, thus necessitating CSAAS evidence to illustrate otherwise. In the former situation, the admission of CSAAS evidence is misplaced and unnecessarily prejudices the defendant.

The majority's decision to permit CSAAS evidence in this situation is erroneously premised on the majority's conclusion that *Dodson* dictates that "[o]nce the witness's credibility is attacked, expert testimony is admissible to rehabilitate the witness." The majority's conclusion misses its mark in two respects. First, *Dodson* does not support this proposition. To the contrary, we limited the admissibility of CSAAS evidence in *Dodson*, recognizing the danger of improperly admitting CSAAS evidence for purposes which transcend its limited utility. We stated:

The problem with this type of evidence is it may incorrectly be used by the fact finder as evidence of abuse. There is a very fine line between an opinion that is helpful to a jury and an opinion that merely conveys a conclusion concerning defendant's guilt. [Citations omitted.]

\* \* \* \* \* \*

No blanket rule can be adopted on this issue. There may be, however, instances in which expert testimony may explain why children delay reporting sexual abuse or do not appear to be fearful of

the perpetrator. Such evidence, if admissible, must be limited strictly to rehabilitative functions ... and the fact finder must be instructed that the testimony is limited to rehabilitation and is not to be used as substantive evidence of abuse. [Citation omitted.]

*Id.* at 612.

Secondly, even if *Dodson* did support this proposition, the CSAAS evidence in this case was misused for the purpose of rebutting evidence concerning the complainant's motivation for fabrication—a purpose outside the scope of the syndrome's scientific validity and reliability. *See* Summit, *The Child Sexual Abuse Accommodation Syndrome,* 7 Int'l J. Child Abuse & Neglect 177 (1983); *see also People v. Bowker,* 203 Cal.App.3d 385, 387, 249 Cal.Rptr. 886, 888 (1988). The allegation concerning the complainant's possible motive to fabricate does not suggest the complainant has behaved in a manner inconsistent with having been sexually abused. It merely suggests to the trier of fact that the complainant may have a motive to fabricate the sexual abuse allegations.

The admission of CSAAS evidence to account for and explain this possible motivation is a misapplication of the syndrome. Where CSAAS testimony is being used to rebut a defendant's attack on the credibility of the victim, at a minimum the evidence must be targeted to a specific "myth" or "misconception" suggested by the evidence. *Bowker,* 203 Cal.App.3d at 394, 249 Cal.Rptr. at 891.

Since defense counsel did not elicit evidence from the complainant which intimated to the jury any "misconception," the State's expert opinion testimony could not, as the State argues, serve to dispel misconceptions concerning how children react to sexual abuse. To the contrary, the State's expert testimony served only to incorrectly and impermissibly bolster the weight and credibility of complainant's testimony.

In future cases, expert testimony regarding the CSAAS or other expert psychological testimony about child complainants in sexual abuse prosecutions should be admitted only for the limited rehabilitative purpose of dispelling misconceptions intimated by defense counsel concerning how child victims react to sexual abuse. I believe the State must carry the burden of establishing to the court by clear and convincing evidence the existence of a misconception which the expert's testimony is intended to dispel. *See Bowker,* 203 Cal.App.3d at 394, 249 Cal.Rptr. at 891–92.

Where expert testimony concerning the CSAAS or other psychological evidence is introduced, the jury should be directly instructed it is not to use such testimony for the purpose of determining the truth of complainant's accusations. *See Dodson,* 452 N.W.2d at 612. The *Bowker* court has succinctly stated the importance of this requirement which was not met in the instant case:

> Beyond the tailoring of the evidence itself, the jury must be instructed simply and directly that the expert's testimony is not intended and should not be used to determine whether the victim's molestation claim is true. The jurors must understand that CSAAS research approaches the issue from a perspective opposite to that of the jury. CSAAS *assumes* a molestation has occurred and seeks to describe and explain common reactions of children to the experience. [Citation omitted.] The evidence is admissible *solely* for the purpose of showing that the victim's reactions as demonstrated by the evidence are not inconsistent with having been molested. [Emphasis in original.]

*Bowker,* 203 Cal.App.3d at 394, 249 Cal. Rptr. at 892.

In the present case the expert's CSAAS testimony exceeded the permissible limits. Furthermore, the necessary safeguards were not administered to limit the purpose for which the evidence was admitted. As a result of the district court's abuse of discretion in admitting the State's expert opinion testimony regarding CSAAS—and the resulting prejudice to the defendant—I would reverse and remand for a new trial.