STATE of Iowa, Plaintiff–Appellee,

v.

James Harry PANSEGRAU, Defendant–Appellant.

No. 93–1635.

Court of Appeals of Iowa.

Aug. 25, 1994.

Linda Del Gallo, State Appellate Defender, and Kevin Cmelik, Asst. State Appellate Defender, for appellant.

Bonnie J. Campbell, Atty. Gen., Sheryl A. Soich, Asst. Atty. Gen., Diann Wilder–Tomlinson, County Atty., and Martha Lucey, Asst. County Atty., for appellee.

Considered by DONIELSON, C.J., and SACKETT and HUITINK, JJ.

SACKETT, Judge.

Defendant-appellant James Harry Pansegrau appeals his conviction of third-degree sexual abuse following a jury trial. He contends the trial court abused its discretion by permitting the introduction of rebuttal testimony of Dr. Cheryl Leytham concerning rape trauma syndrome. We reverse and remand.

The alleged victim claimed to have been raped by defendant while he was showing her around the plant where they both worked. The tour occurred early in her seven and one-half hour work shift. The alleged victim testified she was dressed in shorts and a shirt when defendant took her to a back area and started feeling her pockets. She said when she asked what he was looking for, he wanted to know if she had any candy. She had candy known as "Skittles" and asked him if he wanted some; he said he did not but wanted the one that was in her mouth. Then he tried to kiss her. She said she didn't want to do it. She said he then took her in back and pulled her between stacks and started kissing her, feeling up her shirt and pulled her pants and underwear and his own down and "he proceeded to have intercourse." She said they had intercourse facing the rolls and she can't remember if he turned her around. She didn't know if his penis had contact with her vagina because she couldn't feel it, but later that night "it started running out." She said it took five minutes and they continued the tour which lasted another five or ten minutes, and she went back to work.

She finished the work day. She got a ride home with her sister and, either during this trip or the next day, related the events to her. Two or three days later, she told a member of the local police force and before that discussed it with her brother and other people at work. The evidence regarding the alleged victim's delayed reporting was part of the State's case-in-chief.

Defendant testified on his own behalf and admitted the intercourse took place, but con-

tended it was at the alleged victim's suggestion and instigation, and she even placed his penis in her vagina when he was not able to do so.

At the close of defendant's case, the State said it intended to call rebuttal witnesses, including Dr. Cheryl Leytham, who would testify about the rape trauma syndrome. Defendant objected contending the testimony was not offered to rebut any evidence offered by defendant but was offered to bolster the credibility of the alleged victim.

The question the jury had to answer was whether to believe the alleged victim or the defendant. The question of whether the alleged victim consented to the intercourse was dependent on the jury's determination of whether the alleged victim or the defendant was credible.

The challenged testimony introduced by the State on rebuttal is as follows:

Q. Now sexual abuse trauma. A. That's all trauma. Sexual abuse has another factor because of the variety of cultural society factors, sexual abuse brings more than the average shame and a fear of disclosure. There is a great deal of shame with all trauma survivors, but is much more intensified with sexual abuse survivors.

Q. Assume that a 23-year-old married woman of about two months is a new employee at a manufacturing or production plant; assume further that this is her sixth evening on the job, August 25th, 1992; her immediate supervisor, a 34-year-old male, offers to provide her with a tour of the facility; while outside the plant, the male tries to get the individual to kiss her and is—kiss him, and is rejected. The tour continues to another secluded deserted area of the plant; the woman offers no resistance; the male takes her slacks down and there is contact with her vagina and his penis from the rear as both are in the standing position. Assume further that the woman did not consent to the act, that she did not scream, that the male ejaculated. In your opinion has the woman in this hypothetical situation suffered from any type of trauma, sexual trauma?

MR. ELLEFSON: Your Honor, we're going to object for the three earlier stated reasons.

THE COURT: So noted. Overruled. You may answer.

A. Forced sexual contact brings a trauma reaction in the vast majority of people.

Q. And I believe you've explained that as demonstrating numbness and going on automatic pilot? A. That's right.

Q. And automatic pilot, they just—could you explain that? A. Automatic pilot, they generally go on as if nothing happened. That's what they would like to believe, that nothing happened. They go off and they have a real emotional numbness, so they can do that. They just go back to their jobs or to their homes or whatever, what their life was before, and they just go through it until that numbness wears off.

Q. Further assume that after the male penis-vagina contact, the male—and the male ejaculates, the woman rearranges her clothes, returns to work; that in her work area around her are persons; that the woman does not mention the incident to her coworkers and continues working for approximately three hours, three or more hours; assume later that evening the woman tells her sister some of the incident and that her sister reacts with laughter; that the woman returns to her home, does not tell her husband of the incident that the next day she tells her sister, a coworker and a union representative; then goes to work and completes a shift; that the following day the woman tells the company authorities about the incident and then goes to work. After work that evening the woman contacts the police. In your opinion has the woman in this hypothetical situation behaved in a way that can be expected in her delay in reporting the incident?

MR. ELLEFSON: Again, Your Honor, we make the same objection. Also object it is cumulative due to Captain Joswiak's testimony.

THE COURT: The objections are noted and the ruling is the same. You may answer.

A. Ask the question, I want to make sure that I am answering.

Q. In your opinion has the woman in this hypothetical situation behaved in a way that can be expected from the fact that she delayed reporting the sexual abuse incident? A. Yes.

Q. Would you explain. A. In both research and in my clinical practice, it is—there is a couple factors that happen with reporting of sexual trauma. One is the numbness. Because they're numb and because they're not experiencing emotional effect initially, numerous times I've heard people talk to me about I just want to forget it, I just want to go on, and I can do that. That's one of the factors that delays reporting.

The second factor is if the—especially if there is no witnesses, I won't be believed, people will think bad of me. They'll think this is especially true if she doesn't have a good support system where it happened, people don't know me, they'll think awful things about me so I can't say because they won't believe me. And that would be worse, than no saying even at all, because at that point she's generally still not feeling the full impact of it. It makes it worse and the research is pretty strong on that if—if a survivor tries to tell somebody and that person responds poorly, often because they don't tell the full story, which is typical, they kind of let a little information out to find out if it is going to be okay to tell them, but from the person they're telling perspective, they don't know what's going on. If the reaction is disastrous, which is blamed, ridiculed, any of the things they fear, they generally will not go farther, and either will never tell anyone or will tell someone that they believe will have a better reaction. More often not tell anyone.

    \*    \*    \*    \*    \*    \*

Q. And is it in your experience uncommon for a person who has experienced sexual abuse trauma to delay reporting?

MR. ELLEFSON: Again, we make the same objections.

THE COURT: That one is overruled. You may answer that one.

A. That is common.

The State argues Leytham's testimony was proper rebuttal testimony because it rebutted or dispelled defendant's assertions the alleged victim consented or instigated the sex act. Defendant advances this is not so; rather, the State offered the evidence to show the alleged victim's behavior in delayed reporting was not inconsistent with someone who had been sexually abused.

The State's position is the evidence rebutted defendant's testimony the sex act was consensual. The State reasons, if the alleged victim willingly had intercourse, she would not be expected to suffer trauma after the sex act, while an unwilling participant would likely experience shock, distress, or other emotions. The State follows this with the argument that evidence demonstrating that sexual abuse victims are often too numb to feel the effects of what occurred or to immediately report the crime rebuts evidence introduced by defendant that the alleged victim did not look or act upset and did not immediately report the occurrence.

The State's position is when defendant tried to use these facts to show consent, he opened the door for the rebuttal testimony.

■ We review for an abuse of discretion. *See State v. Windsor,* 316 N.W.2d 684, 688 (Iowa 1982). The trial court is afforded considerable discretion in determining whether to allow rebuttal testimony. *See State v. Mayberry,* 411 N.W.2d 677, 684 (Iowa 1987).

■ The Iowa courts have determined experts should not be allowed to give an opinion on matters that directly render an opinion on the credibility or truthfulness of a witness. *See State v. Brotherton,* 384 N.W.2d 375, 378 (Iowa 1986); *State v. Myers,* 382 N.W.2d 91, 97 (Iowa 1986). Experts are allowed generally to express opinions on matters that explain relevant mental and physical symptoms in persons who are abused. *See Myers,* 382 N.W.2d at 97; *State v. Tonn,* 441 N.W.2d 403, 405 (Iowa App.1989). There is a fine but essential line between testimony that is helpful to the jury and an opinion that

merely conveys a conclusion concerning the defendant's guilt. *Tonn,* 441 N.W.2d at 405.

In several cases involving children, there has been limited approval of allowing testimony that explains normal behavior following abuse. *See State v. Seevanhsa,* 495 N.W.2d 354, 357 (Iowa App.1992) (Sackett, J., specially concurring and Schlegel, J., dissenting); *Tonn,* 441 N.W.2d at 404–05. Defendant advances the issues of reactions and motivation of children are not necessarily the same as adults. There is some merit to this contention.

In *State v. Gettier,* 438 N.W.2d 1, 6 (Iowa 1989), the Iowa court found no abuse of discretion when the trial court allowed testimony of a psychologist, holding a master's degree in counseling and certified as a clinical associate of the American Board of Medical Psychotherapists, as to what she considered typical symptoms exhibited by a person after being traumatized and no more. A careful review of *Gettier* instructs that the Iowa Court has carefully limited the admission of similar testimony and set guide rules for the credentials of the expert as well as limiting the testimony only to the reaction to trauma.

The evidence of the alleged victim's reaction after the event came in the State's case-in-chief and most, if not all, of defendant's evidence relating to those facts was merely a repetition of the evidence offered by the State during its case-in-chief. Defendant never intimated to the jury the alleged victim's behavior following the event was in any way not typical of an adult who experienced nonconsensual intercourse. The most that happened was, on cross-examination, defendant's attorney again defined the period before the alleged victim reported the event. The defendant did not seek to prove the behavior showed the abuse did not take place.

While the State did not use the words "rape trauma syndrome," the State referred repeatedly to "sexual abuse trauma."

There is a temptation to seek the help of persons who hold themselves out as experts in sexual abuse diagnosis and use their opinions in whole or in part to allegedly assist the fact finder in arriving at the truth.

However, before any expert's evidence is used to assist a fact finder in arriving at the truth, it should be shown the expert's opinion provides reliable data. This is particularly important where the testimony seeks to characterize a normal reaction as a characteristic symptom of a traumatic event.

While defendant did not challenge the expertise of the witness, the question of whether these two adults engaged in consensual or nonconsensual intercourse is the decision of the jury and care must be taken that opinions are not allowed that only bias the jury's decision making process. Where evidence of sexual abuse exists, it does not require a mental health expert to draw the appropriate inferences and care should be taken in accepting the testimony of experts who may, without realizing it, take an activist stance and by their testimony seek to maneuver the jury. There was no evidence Leytham's opinion had been generally accepted in the relevant scientific community as a means of detecting sexual abuse. The fact the alleged victim acted normally is not evidence she was sexually abused.

The evidence was not of a general symptom. The hypothetical question outlined all the events the alleged victim had testified preceded the alleged rape. This personalized the opinion and conclusion. The court here admitted testimony beyond the careful exception carved in *Gettier,* 438 N.W.2d at 6.

The testimony exceeded the permissible limits. The necessary safeguards were not administered to limit the purpose for which the evidence was admitted. The trial court abused its discretion. We reverse and remand for a new trial.

**REVERSED AND REMANDED.**