# IN THE COURT OF APPEALS OF IOWA

No. 13-1202
Filed December 24, 2014

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**TRENT D. SMITH,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Black Hawk County, Jeffrey L. Harris, District Associate Judge.

A defendant appeals his convictions for domestic abuse assault causing bodily injury and domestic abuse assault.  **AFFIRMED IN PART; SIMPLE MISDEMEANOR DOMESTIC ABUSE ASSAULT CONVICTION VACATED.**

Mark C. Smith, State Appellate Defender, and Melinda J. Nye, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Jean C. Pettinger, Assistant Attorney General, Thomas J. Ferguson, County Attorney, and Jeremy Westendorf, Assistant County Attorney, for appellee.

Considered by Tabor, P.J., Mullins, J., and Mahan, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2013).

**TABOR, P.J.**

As "happens often in domestic violence" cases, assault victim Mary Dean recanted her allegation that Trent Daniel Smith, the father of her child, was her attacker. In light of her recantation, the prosecution resorted to proving the identity of Dean's assailant through her out-of-court statements. Hearing those statements, the jury convicted Smith of two counts of domestic abuse assault. On appeal, Smith raises hearsay challenges to the admission of Dean's statements to police officers and to emergency room personnel.

We agree with Smith's challenge regarding Dean's audiotaped statements to the officers. The district court improperly allowed the jury to hear a segment of the recording during which Dean identifies Smith as her attacker. That recorded identification was offered for the truth of the matter asserted and did not fall within the hearsay exception for excited utterances. Iowa Rs. Evid. 5.801(c), 5.803(2). But we find Smith was not prejudiced by the erroneous admission because the jury received the same information from a nurse and a doctor who saw Dean in the emergency room. The medical professionals testified the domestic nature of the assault was pertinent to their diagnosis and treatment. Accordingly, we find Dean's disclosures to those professionals were admissible under the hearsay exception under Iowa Rule of Evidence 5.803(4).

In addition, we conclude Dean's sentences and convictions should merge as indicated by the district court's oral sentence pronouncement.[1]

## I.    Background facts and proceedings

The following facts, as presented to the jury, are relevant to our analysis of Smith's two hearsay claims.

Smith and Dean have a six-year-old daughter in common. In the early morning hours of June 9, 2012, Dean—who was home with her daughter—called 911 asking for help. Her plea to the 911 operator was laconic: "Just get here thank you please." Dean and her daughter were waiting in the car outside the house when Waterloo Police Officers John Heuer and Luke LaMere responded to the call.

Dean initially told the police she had been attacked by an unknown assailant. She reported being hit from behind, knocked down, and kicked in the head and arms while on the floor. The police found no one in the house. After a series of questions from Officer LaMere, Dean eventually confirmed that Smith, the father of her child, was the person who assaulted her. Dean also told the officer that Smith called her "a dirty whore."

The officers took Dean to Allen Memorial Hospital in Waterloo. She was seen in the emergency room by nurse Trisha Knipper and Dr. Robert Mott. Screening tools used in the emergency department included questions about

---

[1] The original opinion in this case was filed on November 13, 2014. On November 20, Smith filed a petition for rehearing asking us to clarify the dispositional language to show that we were vacating his lesser included conviction of simple misdemeanor domestic abuse assault. We granted the rehearing on November 25, 2014. We now change the dispositional language to reflect our original holding, but make no other changes to the opinion filed on November 13, 2014.

domestic violence. The nurse recorded Dean's answers on her medical chart, indicating the patient felt afraid and threatened by someone close to her and had been hurt by someone. Dean told the nurse she was assaulted by "her baby's daddy" and reported she was in significant pain. Dean also told Dr. Mott she was attacked by the father of her child. Dr. Mott diagnosed Dean as having a concussion, a cervical strain, and contusions to her face and upper arm. After discharge from the hospital, the police prepared a statement for Dean to sign, but she refused.

The State charged Smith with two counts: (1) domestic abuse assault with intent to commit serious injury, an aggravated misdemeanor in violation of Iowa Code section 708.2A(2)(c) (2011), and (2) domestic abuse assault causing bodily injury, a serious misdemeanor in violation of section 708.2A(2)(b). A jury trial began on April 2, 2013. The State played for the jury the 911 recording and a thirty-five-minute audio-recording of Dean speaking to police,[2] as well as offering testimony from police officers and the emergency room nurse and doctor.

The State also presented expert testimony from an advocate for domestic abuse victims. Seeds of Hope employee Barbara Rindels offered her opinion that "often in domestic violence" cases, victims will recant because they love the abuser and hope he will change or are scared of the abuser and fear reprisal if they testify against him.

---

[2] The recording also has video from a dashboard camera, but does not show Dean or the crime scene. In addition, the sound quality is very poor because the officer's conversation with Dean outside the car is competing with the pop music radio station playing inside the car.

The prosecution called Dean to testify, but only asked her background information about her relationship with Smith and the child they had in common. Dean retook the stand in the defense case, testifying she lied about Smith to both the police and the hospital staff because she was intoxicated that night.[3]

On the first count, the jury found Smith guilty of a lesser included offense of simple misdemeanor domestic abuse assault. On the second count, jurors found him guilty of domestic abuse assault causing bodily injury, as charged. The court sentenced Smith to one year in jail, suspending ninety-five days. The court also imposed a fine of $315 plus a surcharge and court costs. The court placed Smith on probation for one year and ordered him to complete the batterers' education program.

In his appeal, Smith claims the district court improperly admitted hearsay testimony and seeks a new trial.

## II. Analysis of hearsay claims

We review Smith's hearsay challenges for correction of errors at law. *See State v. Thompson*, 836 N.W.2d 470, 476 (Iowa 2013). Hearsay is defined as an out-of-court statement offered to prove the truth of the matter asserted. Iowa R. Evid. 5.801(c). Hearsay statements cannot be presented to the jury unless they fall within an exception or exclusion under the rules of evidence or another provision. *See State v. Newell*, 710 N.W.2d 6, 18 (Iowa 2006). If the district court wrongly admits hearsay evidence over a proper objection, we presume the defendant suffered prejudice unless the record shows "the hearsay evidence did

---

[3] The testimony of the emergency room doctor contradicted her assertion of being under the influence of alcohol.

not affect the jury's finding of guilt." *State v. Elliot*, 806 N.W.2d 660, 667 (Iowa 2011).

Smith flags two hearsay rulings he believes to be in error. First, he claims the court mistakenly overruled his objection to police officer testimony and an audio-tape exhibit which relayed to the jury Dean's allegations that Smith struck and kicked her. Second, Smith contends the court erred in overruling his objection to testimony from emergency room personnel repeating Dean's identification of Smith as her assailant. We will address each claim in turn.

## A. Statements to police

After officers responded to Dean's 911 call, they spoke with her outside of her home. The conversation was recorded using the audio capability of the squad car "dash cam." Dean initially told police she had gone upstairs in her home, heard a noise at the door, went back downstairs, and was attacked from behind. She claimed not to have seen her attacker. The officers were skeptical of her account and continued to ask Dean questions. Eventually, Officer LaMere asked Dean, "What's his last name, Trent what?" She responded, "Trent Daniel." After checking with dispatch, the officers learned Dean's ex-boyfriend was named Trenton Daniel Smith. Dean then confirmed Smith had assaulted her.

The State offered evidence of Dean's out-of-court statements identifying Smith as the person who assaulted her through the testimonies of Officer Heuer and Officer LaMere. Before resting its case, the State also played for the jury the tape recording of Dean's conversation with the officers. On appeal, Smith claims the district court erred in overruling his hearsay objections to this evidence.

The State presses two arguments in response. First, it argues the evidence was not entered to prove the truth of the matter asserted. *See* Iowa R. Evid. 5.801(c). Instead, the State claims the recording was offered to show Dean's reluctance to reveal the identity of her attacker and to show the officers' responsive conduct. Second, the State argues these statements fell under the hearsay exception for excited utterances. *See* Iowa R. Evid. 5.803(2).

We turn first to the claim the evidence was not offered for the truth of the matter asserted. Smith concedes Dean's initial statements on the recording, which did not implicate him, may have been offered to show her bias to protect him. But he insists the statements identifying him as the perpetrator were offered to prove the facts asserted. We agree. In analyzing the admissibility of an out-of-court statement, "we look at the *real* purpose for the offered testimony, not just the purposes urged by the prosecutor." *State v. Elliott*, 806 N.W.2d 660, 668 (Iowa 2011) (quoting *State v. Sowder*, 394 N.W.2d 368, 371 (Iowa 1986)). An officer may explain the steps of his investigation by stating he took them in response to a complaint without running afoul of the hearsay rule, but if the officer's testimony turns more specific "by repeating definite complaints of a particular crime by the accused, this is so likely to be misused by the jury as evidence of the fact asserted that it should be excluded as hearsay." *State v. Doughty*, 359 N.W.2d 439, 442 (Iowa 1984) (citing *McCormick's Handbook on the Law of Evidence* § 248, at 587 (2d ed. E. Cleary 1972)).

Here, Smith's identity was an essential element of the State's case, and the State did not question Dean about her identification of Smith during its case

in chief because of her recantation. *See State v. Tracy*, 482 N.W.2d 675, 679 (Iowa 1992) (finding reversible error when "the State places a witness on the stand who it expects to give unfavorable testimony solely for the purpose of introducing otherwise inadmissible evidence"). Accordingly, we find her out-of-court identification of Smith as her assailant was being offered for its truth, and thus constituted hearsay.

The next question is whether Dean's hearsay statements to the officers fell within the scope of the excited utterance exception. An excited utterance is a statement relating to a startling event or condition made while the declarant was under the stress of the event. Iowa R. Evid. 5.803(2); *State v. Richards*, 809 N.W.2d 80, 95 (Iowa 2012). We assess the admissibility of a statement under the excited utterance exception based on the following factors:

> (1) the time lapse between the event and the statement, (2) the extent to which questioning elicited the statements that otherwise would not have been volunteered, (3) the age and condition of the declarant, (4) the characteristics of the event being described, and (5) the subject matter of the statement.

*State v. Atwood*, 602 N.W.2d 775, 782 (Iowa 1999).

In this case, the time lapse between the event and the statements at issue was roughly two hours. That stretch of time is not outside the realm of admissibility. *See id.* at 782–83 (allowing statement made two and one-half hours after startling event). Dean was an adult—twenty-nine years old at the time of trial—but the record shows she remained upset and fearful at the time of the interview with police. The excited-utterance exception can be invoked even when the declarant is in the process of calming down and is "able to act rationally

and function in a relatively normal manner." *See State v. Mateer*, 383 N.W.2d 533, 536 (Iowa 1986). Moreover, the subject matter of Dean's statement was a traumatic event.

Notwithstanding those circumstances, we find the most telling factor in this case is the extent to which Dean's declarations were elicited by the officers' questioning. We recognize not all statements prompted by questions are automatically disqualified from the excited utterance exception. *State v. Harper*, 770 N.W.2d 316, 320 (Iowa 2009) (finding excited utterances in response to physician asking victim "what had happened"). But here, Dean's statements identifying Smith as her attacker were the product of persistent police questioning and would not have otherwise been volunteered. Dean was asked far more than "what happened?" Officer Lamere had to pose several different inquiries to get the name "Trent Daniel." Given the extent of the police questioning, we find Dean's statements were not admissible under the excited utterance exception. *See State v. Cagley*, 638 N.W.2d 678, 681–82 (Iowa 2001) (upholding trial court's exclusion of statements offered as excited utterances, in part, because they were in response to questions by police).

Our determination that Dean's statements to police were improperly admitted is not the end of the inquiry. "In considering whether the admission of hearsay is reversible error, we have held that notwithstanding the presumption of prejudice from the admission of such evidence, the erroneously admitted hearsay will not be considered prejudicial if substantially the same evidence is properly in the record." *State v. Newell*, 710 N.W.2d 6, 19 (Iowa 2006). The admission of

hearsay statements can be harmless if other sources duplicate the testimony. *State v. Johnson*, 272 N.W.2d 480, 482-83 (Iowa 1978).

Our supreme court has examined when the cumulative nature of hearsay evidence may render its improper admission to be non-prejudicial. *Elliott*, 806 N.W.2d at 669. In *Elliott*, the court stated:

> One way to show the tainted evidence did not have an impact on the jury's verdict is to show the tainted evidence was merely cumulative. If the record contains cumulative evidence in the form of testimony, the hearsay testimony's trustworthiness must overcome the presumption of prejudice. We measure the trustworthiness of the hearsay testimony based on the trustworthiness of the corroborating testimony.

*Id.* (citations omitted).

Dean's hearsay statements to police were cumulative of her later statements to an emergency room nurse and doctor, which we find in the next division of this decision to be admissible under the hearsay exception for statements made for the purposes of medical diagnoses and treatment. *See* Iowa R. Evid. 5.803(4). The United States Supreme Court has recognized statements made in the course of receiving medical care as having been "made in contexts that provide substantial guarantees of their trustworthiness." *White v. Illinois*, 502 U.S. 346, 355 (1992); *but see United States v. Bercier*, 506 F.3d 625 (8th Cir. 2007) (finding victim's hearsay statements to treating physician were prejudicial to defendant, but noting the government did not offer them under the exception for medical diagnosis and treatment). Because Dean's statements to the nurse and doctor constituted trustworthy corroboration, we find Smith was not prejudiced by admission of Dean's hearsay statements to police.

**B. Statements to medical professionals**

After interviewing Dean at her house, the officers took her to the emergency room because she was experiencing significant pain. Smith argues Dean's statements to a nurse and doctor at the emergency room also should have been excluded as hearsay. The State believes statements were admissible under rule 5.803(4). That rule provides the following statements are not excludable even though the declarant is available as a witness:

> Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

Iowa R. Evid. 5.803(4).

Emergency room nurse Trisha Knipper evaluated Dean's condition when she came to the hospital at about 2 a.m. on June 9, 2012. Knipper testified it was part of her job to document complaints, diagnoses, and treatment. The nurse asked Dean what happened, and Dean said "she was assaulted by her baby's daddy around midnight." Knipper testified that as a nurse she asks patients about possible domestic violence situations as part of the hospital's general screening process. The nurse testified she asks if the patient "feels safe where they live" and if there is "any domestic violence going on." As part of this screening process, Dean told the nurse that she was afraid of someone close to her and had been "physically hurt by her baby's daddy." Knipper also testified that in addition to pain medications, Dean was prescribed an anti-anxiety medication to help her relax.

Dean also saw Dr. Robert Mott at the emergency room. Dr. Mott testified Dean reported that she "was attacked by the father of her child." He also testified that knowing what had happened to a patient was "key" for providing the necessary treatment.

On appeal, Smith accepts that Dean's statements to medical personnel describing "that she'd been assaulted and kicked in the head would fall under the medical treatment and diagnosis exception," but argues "her statement identifying Smith as her attacker would not." He cites the general principle that statements attributing blame or identifying persons inflicting an injury do not satisfy the standard for medical pertinence under rule 5.803(4) in most cases. *See* 7 Laurie Kratzky Doré, *Iowa Practice Series*, *Evidence* § 5.803:4, n.20 (2013) (acknowledging "Iowa has expansively construed" a hearsay exception for victims of child abuse regarding the identity of their abuser); *see also McCormick on Evidence* § 277 (6th ed. 2006) ("Descriptions of cause are similarly allowed if they are medically pertinent, but statements of fault are unlikely to qualify.").

In response, the State directs us to the two-part test for admissibility of statements under rule 5.803(4) set out in *State v. Tracy*, 482 N.W.2d 675, 681 (Iowa 1992) (quoting *United States v. Renville*, 779 F.2d 430, 436 (8th Cir. 1985)). First, the motive in making the statement must be consistent with the purposes of promoting treatment. *Id.* Second, the content of the statement must be such as is reasonably relied on by a physician in treatment or diagnosis. *Id.* Both *Tracy* and *Renville* involved child abuse victims.

In *Renville*, the court noted nothing in the record indicated the child's motive in making the statements to her physician was other than as a patient responding to a doctor's questioning for prospective treatment. 779 F.2d at 439. The harder question was whether the content of the child's statement—including the identity of the alleged abuser—was reasonably relied upon by a physician in treatment or diagnosis. The *Renville* court determined the identity was "reasonably pertinent to diagnosis or treatment" when the child abuser was a member of the victim's immediate household. *Id.* at 436–37.

Our supreme court adopted the *Renville* holding, providing the following analysis:

> Since child abuse often involves more than physical injury, the physician must be attentive to treating the emotional and psychological injuries which accompany this offense. To adequately treat these emotional and psychological injuries, the physician will often times need to ascertain the identity of the abuser. Moreover, as *Renville* further notes, physicians have an obligation to prevent "an abused child from being returned to an environment in which he or she cannot be adequately protected from recurrent abuse."

*Tracy*, 482 N.W.2d at 681 (internal citation omitted).

The State asks us to extend the application of *Tracy* to adult domestic violence victims, reasoning: "Although an adult is not dependent on health professionals for relief from the abuse to the same extent as a child, domestic violence can severely compromise an adult's autonomy." Ten years ago, in an unpublished decision, a three-member panel of our court declined a similar invitation. *See Donald v. State*, No. 03-1087, 2004 WL 1813742, at *4–5 (Iowa Ct. App. Aug. 11, 2004) (holding "the rule in *Tracy* should not be expanded to

permit the admission into evidence of statements made by an adult victim identifying her abuser by name as statements-for-purposes-of-medical-diagnosis exception to hearsay").

Today we reach a different conclusion regarding the extension of *Tracy*. In *Donald*, the statements at issue were made by an adult sexual abuse victim and the record did not show the defendant had ever been a member of her household. *Id.* By contrast in this case, Dean and Smith had an ongoing domestic relationship based on having a child in common. *See* Iowa Code § 236.2(2)(c) (defining domestic abuse as assault between parents of the same minor child). Their continuing contact was documented by Officer LaMere's testimony he had been to Dean's home on a call about nine months earlier and Smith had been there. Our supreme court has recognized "domestic violence is a pattern of behavior, with each episode connected to the others." *See Richards*, 809 N.W.2d at 93 (quoting *State v. Taylor*, 689 N.W.2d 116, 129 n.6 (Iowa 2004)). The court also has allowed expert testimony on "battered women's syndrome" to explain "that continued exposure to domestic abuse leads to a feeling of helplessness, where the victim often begins to believe what she is being told by her abuser, i.e., that she is ignorant, stupid, ugly, a terrible mother, etc. The victim feels trapped and unable to leave," the abusive relationship. *See State v. Rodriquez*, 636 N.W.2d 234, 245 (Iowa 2001). These realizations about domestic violence show that, like child abuse, it is accompanied by emotional and psychological injuries. To adequately treat these emotional and

psychological injuries, medical professionals need to ascertain the identity of the abuser.

Also in *Donald,* there was no evidence the emergency room nurse and doctor who testified relied on the patient's identification of the perpetrator as part of their diagnoses or treatment. 2004 WL 1813742, at *5. Again by contrast in this case, nurse Knipper and Dr. Mott testified information about the domestic abuse assault was critical to their diagnosis and treatment. Knipper explained the screening questions about intimate violence were even institutionalized as part of the hospital's intake forms. The medications prescribed also indicate the medical professionals were treating Dean's physical *and* psychological condition.

Our conclusion that the identity of a domestic abuse assailant can be medically pertinent to the declarant's diagnoses and treatment has been reached by several other jurisdictions. *See, e.g., United States v. Joe*, 8 F.3d 1488, 1495 (10th Cir. 1993) (holding statement by estranged wife to physician that her husband raped her was reasonably pertinent to her proper treatment); *Moore v. City of Leeds*, 1 So.3d 145, 150 (Ala. Crim. App. 2008) (concluding adult victim's statement to physician that her injury resulted from altercation with her husband was admissible because identity of perpetrator was related to treatment of emotional and psychological injuries suffered by victim); *Nash v. State*, 754 N.E.2d 1021, 1025 (Ind. Ct. App. 2001) (concluding victim's statement of identity was reasonably pertinent to the effort of the emergency room staff in treating her, to identifying the underlying cause of the sexual abuse and in seeking to prevent further domestic abuse); *People v. Pham*, 987 N.Y.S.2d 687, 690–91 (N.Y. App.

Div. 2014) (holding "[d]etails of the abuse, even including the perpetrator's identity, may be relevant to diagnosis and treatment when the assault occurs within a domestic violence relationship because the medical provider must consider the victim's safety when creating a discharge plan and gauging the patient's psychological needs"); *State v. Moses*, 119 P.3d 906, 911 (Wash. Ct. App. 2005) (recognizing exception to general rule that statements attributing fault are not relevant to diagnosis or treatment for domestic violence cases because the identity of the abuser is pertinent and necessary to the victim's treatment); *Oldman v. State*, 998 P.2d 957, 962 (Wyo. 2000) (admitting adult victim's statement to emergency room physician that her husband had beaten and bit her, finding "no logical reason" for not applying Tenth Circuit's rationale in *Joe* to "non-sexual, traumatic abuse within a family or household, since sexual abuse is simply a particular kind of physical abuse"); *Commonwealth v. O'Connor*, 6 N. Mar. I. 125, 129 (N. Mar. I. 2000) (noting "in spousal abuse cases, the perpetrator's identity may be essential to diagnosis and treatment of, for example, situational depression); *but see Johnson v. State*, 579 P.2d 20, 22 (Alaska 1978) (holding statements by severely beaten wife, who eventually died from her injuries, identifying husband as assailant did not relate to her diagnosis or treatment).

The Supreme Court of Minnesota considered the admissibility of statements by an injured woman to her treating nurse identifying the father of her children as her assailant in *State v. Robinson*, 718 N.W.2d 400, 405 (Minn.

2006). The court declined to adopt a categorical rule of admissibility for statements of identification by victims of domestic abuse, explaining as follows:

> We are not able to determine . . . the notion that the identification of the perpetrator of domestic violence is reasonably pertinent to medical diagnosis and treatment is generally accepted in the medical profession. . . . We can speculate that the medical profession may have evolved to recognize the importance of treating the whole person of a victim of domestic violence, including the emotional and psychological effects of past violence and the potential of future violence. But we can do no more than speculate. The record before us contains no medical expert testimony on the scope of the customary treatment of a victim of domestic violence or whether the identity of the domestic abuser is reasonably pertinent to that treatment.

*Robinson*, 718 N.W.2d at 406. The Minnesota court did not foreclose the possibility that it "might in the future adopt a properly limited categorical rule of admissibility under the medical exception to hearsay for statements of identification by victims of domestic violence" if it was presented with sufficient evidentiary foundation. *Id.* at 407.

Our decision that the district court properly allowed Dean's statements to the emergency room nurse and doctor under rule 5.803(4) is not a categorical rule of admissibility for all identification statements in cases of domestic violence. As indicated above, we are persuaded by the testimony of nurse Knipper and Dr. Mott that the identity of Dean's assailant as the father of her child was pertinent to their medical diagnosis and treatment of Dean. On the first step for admissibility, we find Dean's motive in giving information to the emergency room nurse and doctor was consistent with promoting the treatment of her injuries. On the second step, we find the content of her statements, including the identification of her child's father as her assailant, was reasonably relied upon for

diagnoses and treatment decisions by the medical professionals in this case. Accordingly, we find no error in the district court's admission of Dean's statements at the hospital.

Finally, we find the hearsay evidence admitted under rule 5.803(4) through the doctor and nurse meets the degree of trustworthiness described in *Elliott* as necessary to corroborate Dean's identification of Smith as her attacker.

## III.    Merging convictions

Smith claims the district court erred by entering an illegal sentence when the district court merged only the sentences and not the convictions of domestic abuse assault and domestic abuse assault causing bodily injury. The State agrees we should vacate the conviction for the lesser included offense of simple misdemeanor domestic abuse assault. Violations of the merger doctrine are reviewed for corrections of legal errors. *State v. Rodriquez*, 636 N.W.2d 234, 246 (Iowa 2001).

During the oral pronouncement of Smith's sentence, the district court stated:

> It is the sentence of this court, pursuant to Iowa Code section 903.1, that on the offense of Assault Domestic Abuse Causing Bodily Injury, which merges with the offense of Assault Domestic Abuse, you shall be confined in the Black Hawk County Jail for a term not to exceed 365 days, all of which shall be fully suspended during periods of your good behavior, except for 270 days.

But in the written sentencing order, the district court only merged the offenses "for sentencing purposes." The parties agree "where there is a discrepancy between the oral pronouncement of sentence and the written judgment and commitment, the oral pronouncement of sentence controls." *State v. Hess*, 533

N.W.2d 525, 528 (Iowa 1995). Therefore, we merge Smith's convictions and sentences.

**AFFIRMED IN PART; SIMPLE MISDEMEANOR DOMESTIC ABUSE ASSAULT CONVICTION VACATED.**