**STATE of Iowa, Appellee,**

v.

**Ronald R. TRACY, Appellant.**

**No. 90–130.**

Supreme Court of Iowa.

March 18, 1992.

676

Kent A. Simmons, Davenport, for appellant.

Bonnie J. Campbell, Atty. Gen., Sheryl A. Soich, Asst. Atty. Gen., and Kjas T. Long, County Atty., for appellee.

SNELL, Justice.

Appellant, Ronald R. Tracy, appeals his conviction of third-degree sexual abuse in violation of Iowa Code section 709.4(2)(c)(1) (1991). On application by appellant our court remanded for the purpose of making a record on the issue of ineffective assistance of defense counsel. After hearing evidence, the trial court found that counsel was not ineffective. On appeal, the court of appeals affirmed the conviction. We have considered the case on further review. Because we conclude that error occurred in the admission of certain items of evidence and that Tracy's defense was thereby prejudiced, we vacate the decision of the court of appeals, reverse and remand for a new trial.

On October 2, 1989, the Jackson County attorney filed a trial information charging Tracy with third-degree sexual abuse of his stepdaughter, hereinafter K.A. The jury returned a verdict of guilty, and Tracy was sentenced to a term of imprisonment not to exceed ten years.

A suspicion that K.A. was being sexually abused first arose in March, 1989, when she indicated to a friend at school, Deanna, that her dad was molesting her. At that time K.A. was sixteen years old. Later, that month, Deanna's mother phoned the school nurse, Jackie Crowley. Nurse Crowley then arranged a meeting with Deanna and K.A. At the meeting, Deanna

told Nurse Crowley that K.A. had complained of being "touched in a way she was upset about." There was also some complaint about being touched in a "sexual manner." Deanna added that "there were some problems with her stepfather whom she called her dad." In response to this information, Nurse Crowley arranged for a second meeting with a child abuse investigator.

At the second meeting on March 22, 1989, K.A. indicated that she and Tracy had engaged in sexual intercourse on several occasions. This statement was made before Nurse Crowley, Ceatta Mann, a child abuse investigator, and Millie Kopp, an employee from the sheriff's office. A typewritten summary of K.A.'s statement was prepared, which K.A. then signed. The statement alleged instances of sexual intercourse, *i.e.*, genital to genital contact, between K.A. and her stepfather. Later that same day K.A. was removed from Tracy's home and placed in foster care.

On March 23, 1989, K.A. was examined by Dr. Kathleen Opdebeeck, a developmental pediatrician. Dr. Opdebeeck compiled a social history on K.A. and then conducted a vaginal examination. Based upon her exam, Dr. Opdebeeck concluded that K.A. had engaged in sexual intercourse at some point in time.

On May 10, 1989, K.A. returned to Nurse Crowley's office and stated that everything she had said in her signed statement was a lie. At trial, K.A. testified that she had made up the story about her stepfather sexually abusing her in order to get out of his home. She explained that the hard work and long hours associated with Tracy's hog and dairy operation eliminated any time she might otherwise have had for social and extra-curricular school activities. Apparently, K.A. was required to get up at 4:00–4:30 a.m. in order to work before attending school; after school, she often had to work until 8:30 or 9:00 p.m. K.A. testified that her scheme worked; after making the complaint of sexual abuse, K.A. and her sister, Kari, were removed from the home and placed in foster care, which provided more time for school activities and dating.

Dr. Hunter Comly, a child psychiatrist, met with K.A. on July 17, 1989. Dr. Comly testified that he spent about an hour to an hour and a half with K.A. and conducted various psychological tests. Dr. Comly further testified, without objection, that there was evidence that K.A. was suffering from child sexual abuse accommodation syndrome. He indicated that the syndrome would explain K.A.'s retraction of the written statement she had signed in Nurse Crowley's office. In addition, Comly was allowed to testify that in his opinion, K.A. was telling the truth when she first reported sexual abuse by her stepfather.

The State also offered the testimony of K.A.'s nine-year-old sister, Kari. She testified that in June or July of 1988 she had seen K.A. and Tracy on the bed in K.A.'s bedroom. Kari indicated that Tracy was partially undressed and "had his arm in her private spot going up and down." She added that "K.A. had her hand on Tracy's penis and was squeezing." The State also presented the testimony of Deanna who stated that she asked K.A. if they actually had sex and K.A. responded "yes."

## I. *The Turecek Violation.*

The State offered the testimony of K.A. as part of its case in chief, knowing full well that K.A. intended to deny any sexual abuse by her stepfather, Ron Tracy. After offering K.A.'s testimony, the State then proceeded to impeach her by various means. The State offered Dr. Comly's opinion that K.A. was suffering from child sexual abuse accommodation syndrome, which accounted for her recantation; Dr. Comly further opined that "there are probably no more than two or three children per thousand who come forth with such a serious allegation who are found later to be dishonest." We note that the admission of Dr. Comly's testimony concerning the truthfulness of K.A.'s testimony *is in viola-* tion of our holding in *State v. Myers,* 382 N.W.2d 91, 97–98 (Iowa 1986). However, we choose not to rest our conclusions in the present case upon the *Myers* violation alone.

■ To further support their "impeachment" of K.A., the State offered evidence of numerous inconsistent statements made by K.A. prior to her trial testimony. Included among these was the signed statement K.A. had made at the school nurse's office in which she accused her stepfather of sexual abuse. In addition, the State offered testimony by K.A.'s mother, K.T., K.A.'s best friend, Deanna, Jackie Crowley, Ceatta Mann, and Millie Kopp, all of whom recounted the graphic complaints of sexual abuse K.A. had previously related to them.

Clearly, all of the above testimony that merely recounted K.A.'s initial complaint of sexual abuse by her father would have been inadmissible hearsay testimony if offered for any purpose other than impeachment. Iowa R.Evid. 801(c) (" 'hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."). Similarly, Dr. Comly's testimony regarding child sexual abuse accommodation syndrome and the general truthfulness of child abuse victims was relevant to the prosecution's case only insofar as it tended to discredit K.A.'s testimony. Thus, if K.A. had not testified, neither Dr. Comly's testimony nor evidence of K.A.'s prior inconsistent statements would have been admissible.

■ We have recently condemned this sort of prosecutorial maneuvering in which the State places a witness on the stand who it expects to give unfavorable testimony solely for the purpose of introducing otherwise inadmissible evidence. *State v. Turecek*, 456 N.W.2d 219, 224–25 (Iowa 1990). In *Turecek*, we qualified the State's right to impeach its own witnesses as follows:

> The right given to the State to impeach its own witnesses under Iowa Rule of Evidence 607 and our decision in *State v. Trost*, 244 N.W.2d 556, 559–60 (Iowa 1976), is to be used as a shield and not as a sword. The State is not entitled under rule 607 to place a witness on the stand who is expected to give unfavorable testimony and then, in the guise of impeachment, offer evidence which is otherwise inadmissible. To permit such bootstrapping frustrates the intended application of the exclusionary rules which rendered

such evidence inadmissible on the State's case in chief.

*Turecek*, 456 N.W.2d at 225. Given that the record clearly reveals that the State knew K.A. intended to retract the allegations of sexual abuse she had formerly made, we must assume the State orchestrated this series of events merely to place before the trier of fact various items of evidence that would otherwise be inadmissible. As we concluded in *Turecek*, this sort of maneuvering constitutes reversible error. *Id.* at 226.

■ Although defense counsel objected to the testimony given by Jackie Crowley, Ceatta Mann and Millie Kopp as being hearsay, thus properly preserving error on this issue, he failed to lodge similar objections to the testimony given by K.A.'s mother, Deanna and Dr. Comly. Nevertheless, given the seriousness of a *Turecek* violation, any failure to preserve error at the trial level would entitle Tracy to assert a claim of ineffective assistance of counsel. To establish a claim that trial counsel was ineffective, in derogation of one's sixth amendment right to counsel, two elements must be shown: "(1) counsel failed to perform an essential duty, and (2) prejudice resulted therefrom." *Taylor v. State*, 352 N.W.2d 683, 685 (Iowa 1984). In this de novo review, Tracy has the burden to prove both of these elements by a preponderance of the evidence. *Id.*

■ In deciding whether trial counsel failed to perform an essential duty, "we require more than a showing that trial strategy backfired or that another attorney would have prepared and tried the case somewhat differently.... Petitioner must overcome a presumption that counsel is competent." *Id.* "When counsel makes a reasonable decision concerning strategy ... we will not interfere simply because it did not achieve the desired result." *State v. Newman*, 326 N.W.2d 788, 795 (Iowa 1982).

■ We do not believe that the trial strategy adopted by Tracy's trial counsel was reasonable in allowing into the record all of the otherwise inadmissible evidence given by K.A.'s mother, Deanna, and Dr.

Comly. Although *Turecek* was not decided until after the date of Tracy's trial, the egregiousness of a *Turecek* violation would make it incumbent upon defense counsel to voice an objection, even in the absence of established case law on the matter. The State's suggestion that Tracy's trial counsel may have intentionally allowed Dr. Comly to testify so as to cross-examine him regarding a seemingly inconsistent statement in his report, which suggested that K.A. may have made up a lie in her testimony, is simply not tenable. The collective prejudicial impact of Dr. Comly's testimony in conjunction with that given by the others clearly outweighs any favorable testimony that could reasonably have been anticipated in the course of Comly's cross-examination. Finally, we conclude that any argument that defense counsel failed to object so as to avoid calling the jury's attention to Comly's unfavorable testimony is unreasonable in light of our position that the mere admission of such evidence is reversible error; this proposition applies with equal force to the hearsay testimony given by K.A.'s mother and Deanna. In short, we find that Tracy's trial counsel failed to perform an essential duty in failing to make a timely objection to the testimony indicated above.

 The second element of an ineffective-assistance-of-counsel claim requires the defendant to show that counsel's failure to perform an essential duty resulted in prejudice. *Taylor*, 352 N.W.2d at 685. To show prejudice, Tracy must prove that there is "a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *State v. Hildebrant*, 405 N.W.2d 839, 841 (Iowa 1987) (quoting *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674, 698 (1984)). Given the prodigious volume of testimony that was admitted under the guise of "impeachment," Tracy satisfied his burden of showing that had the appropriate objections been raised in a timely manner, there was a reasonable probability that he would have been acquitted. Thus, despite the fact that error was not properly preserved with respect to the testimony given by Dr. Comly, K.A.'s mother, and Deanna—as is normally required before we will reach the merits of an asserted error—we conclude that the cumulation of this evidence with the other inadmissible testimony discussed above entitles Tracy to a new trial.

## II. *Hearsay Exception 803(4): Statements Made For Purposes of Medical Diagnosis or Treatment.*

Dr. Kathleen Opdebeeck, a developmental pediatrician offered as part of the State's case in chief, conducted a medical examination of K.A. on March 23, 1989, at the St. Luke's Child Protection Center. Dr. Opdebeeck's testimony consisted of a social history elicited from K.A. as well as the results of her physical findings. Dr. Opdebeeck testified that upon asking K.A. about any sexual activity she might have had, K.A. stated that "she had been having sexual activity with her stepfather on a regular basis for the past few years." In addition, Dr. Opdebeeck stated that the vaginal examination led her to conclude that K.A. was sexually active.

Tracy objects to Dr. Opdebeeck's testimony on essentially two grounds. First, as to the physical examination, Tracy argues that the evidence was irrelevant and, alternatively, unduly prejudicial. As to the social history related by Dr. Opdebeeck, Tracy maintains that this was inadmissible hearsay that does not fall within the exception outlined in Iowa Rule of Evidence 803(4), which allows the admission of hearsay statements made for purposes of medical diagnosis or treatment. Because this dispute is likely to reoccur in Tracy's new trial, we will address it presently.

 Iowa Rule of Evidence 401 provides that " 'relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Iowa R.Evid. 401. Whether the necessary minimum level of logical connection between the offered evidence and the fact to be proven exists is a legal question lying within the broad dis-

cretion of the trial court. *State v. Wilson,* 406 N.W.2d 442, 447 (Iowa 1987). We conclude that the trial court did not abuse that discretion in determining that the physical evidence of prior sexual relations was logically connected to the ultimate proposition sought to be proved, namely, whether K.A. had been sexually abused by her stepfather. Similarly, we find no merit in Tracy's argument that Dr. Opdebeeck's physical findings contravene Iowa Rule of Evidence 403, which excludes relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion, or wasteful use of court time.

The more difficult question is whether Dr. Opdebeeck should be permitted to repeat the statement she elicited from K.A. concerning the identity of her abuser. Although this testimony clearly constitutes hearsay, the State argues that the exception embodied in rule 803(4) allows its admission. Iowa Rule of Evidence 803(4) provides that:

> [s]tatements made for purposes of medical diagnosis or treatment in describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment are not excluded by the hearsay rule, even though the declarant is available as a witness.

The specific issue before us is whether the identification by K.A. of her abuser is "reasonably pertinent to diagnosis or treatment." In *United States v. Renville,* 779 F.2d 430 (8th Cir.1985), the Court concluded that, under the federal rules of evidence, statements by a child abuse victim concerning the identity of the abuser made to a physician during an examination are "reasonably pertinent to diagnosis or treatment" where the abuser is a member of the victim's immediate household. *Id.* at 436; *see also United States v. Provost,* 875 F.2d 172, 177 (8th Cir.1989) (affirming the *Renville* analysis), *cert. denied,* 493 U.S. 859, 110 S.Ct. 170, 107 L.Ed.2d 127. The *Renville* court utilized a two-part test for establishing the admissibility of hearsay statements under rule 803(4): "first the declarant's motive in

making the statement must be consistent with the purposes of promoting treatment; and second, the content of the statement must be such as is reasonably relied on by a physician in treatment or diagnosis." *Renville,* 779 F.2d at 436.

As to the first requirement, the court noted that the physician had emphasized the importance of truthful responses on the part of the victim in providing her with treatment for any physical or emotional problems that she might have as a result of the abuse suffered. *Id.* at 438–39. Moreover, the *Renville* court noted that nothing in the record indicated that the child's motive in making the statements to her physician was other than as a patient responding to a doctor's questioning for prospective treatment. *Id.* at 439. Thus, when the record reveals that the examining doctor emphasized to the alleged victim the importance of truthful responses in providing treatment and the record further indicates that the child's motive in making the statements was consistent with a normal patient/doctor dialogue, the first element of the two-part test will typically be satisfied.

The second part of the *Renville* test for admissibility under rule 803(4) requires that the content of the statement be such as is reasonably relied on by a physician in treatment or diagnosis. Where the alleged abuser is a member of the victim's immediate household, statements regarding the abuser's identity are reasonably relied on by a physician in treatment or diagnosis. *Id.* at 436–37. Since child abuse often involves more than physical injury, the physician must be attentive to treating the emotional and psychological injuries which accompany this offense. *Id.* To adequately treat these emotional and psychological injuries, the physician will often times need to ascertain the identity of the abuser. *Id.* Moreover, as *Renville* further notes, physicians have an obligation to prevent "an abused child from being returned to an environment in which he or she cannot be adequately protected from recurrent abuse." *Id.* at 438; *see* Iowa Code § 232.-69(1)(a) (1991). "Information that the abuser is a member of the household is therefore 'reasonably pertinent' to a course of

treatment which includes removing the child from the home." *Id.* at 438.

Because of the nature of child sexual abuse, the only direct witnesses to the crime will often be the perpetrator and the victim. Consequently, much of the State's proof will necessarily have to be *admissible* hearsay statements made by the victim to relatives and medical personnel. While we are cognizant of the accused's right to cross-examine adverse witnesses, we approve of the *Renville* analysis and suggest that it be used to rule on the admissibility of Dr. Opdebeeck's testimony should that issue arise in Tracy's new trial.

We conclude that the judgment of the district court must be reversed, and the case is remanded to that court for a retrial not inconsistent with the conclusions established herein.

DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND REMANDED.

All Justices concur except ANDREASEN, HARRIS and LARSON, JJ., who dissent.

ANDREASEN, Justice (dissenting).

I dissent.

The majority opinion is primarily based upon its finding that the State impeached its own witness, K.A., in violation of our holding in *State v. Turecek*, 456 N.W.2d 219 (Iowa 1990). Tracy did not raise this issue at trial (Tracy was convicted in December 1989; *Turecek* was decided in May 1990). Nor did Tracy raise this issue in his appellate briefs. An issue is waived or abandoned if it is not included in appellant's brief. *Hubby v. State*, 331 N.W.2d 690, 694 (Iowa 1983). Our review of a law action is confined to errors assigned. *Id.* K.A.'s prior inconsistent statements, used to impeach, do not come within the definition of hearsay. *State v. Hill*, 243 N.W.2d 567, 570 (Iowa 1976).

Tracy raised three claims of ineffective assistance of counsel. He urged trial counsel failed to object to certain testimony of (1) Dr. Comly, (2) Dr. Opdebeeck and failed to (3) request instruction as to the use of unsworn prior inconsistent statements.

These issues were addressed by the trial court upon remand.

I agree with the majority opinion that counsel did not err in failing to object to the testimony of Dr. Opdebeeck or to the expert testimony of Dr. Comly relating to sexual abuse accommodation syndrome. In consideration of the remaining preserved issues I, like the trial court and the court of appeals, find Tracy has failed to prove that prejudice resulted. I would affirm the district court judgment and the decision of the court of appeals.

HARRIS and LARSON, JJ., join this dissent.