# IN THE COURT OF APPEALS OF IOWA

No. 23-0740
Filed February 5, 2025

**FREDERICK ELMAR ELIFRITZ III,**
Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
Respondent-Appellee.
_____

Appeal from the Iowa District Court for Wapello County, Greg Milani, Judge.

An applicant appeals the denial of his application for postconviction relief.

**AFFIRMED.**

Denise M. Gonyea of McKelvie Law Office, Grinnell, for appellant.

Brenna Bird, Attorney General, and Sheryl Soich, Assistant Attorney General, for appellee State.

Considered by Tabor, C.J., Chicchelly, J., and Vogel, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2025).

**VOGEL, Senior Judge.**

Frederick Elifritz was convicted of third-degree sexual abuse, incest, and lascivious acts with a minor after sexually abusing his daughter. He now seeks postconviction relief ("PCR") from those convictions, arguing his counsel failed to meaningfully defend the State's case against him. The PCR court denied relief, and he appeals. We agree with the PCR court that all of Elifritz's grievances stem from reasoned, strategic decisions by trial counsel. Accordingly, we find no breach of essential duty by counsel nor resulting prejudice to Elifritz and affirm the PCR court.

## I.        Factual Background and Proceedings.

Growing up, the daughter was raised by her mother—Elifritz was absent from her life. She experienced some developmental delays and at times received special education. When she turned twelve, the daughter expressed an interest in knowing her father, so the mother located Elifritz. Elifritz expressed a similar interest in starting a relationship with the daughter. The visits went well and, over time, Elifritz and the mother also rekindled their relationship, eventually marrying. At first, the daughter was thrilled with her reunited family. However, Elifritz's behavior toward her changed while she was in high school.

When the mother was at work, Elifritz started showing his daughter pornography. He later asked if she "wanted to do what was on the video." The daughter refused, but Elifritz took her to his bedroom and removed her clothes. She was scared and "froze up" as he "was sticking his penis in [her] vagina." After it was over, he told the daughter not to tell anyone. Later the daughter revealed that it happened again, "several times."

The daughter eventually confided in a friend, who reported it to a teacher and a counselor. The school alerted law enforcement, who began investigating. As part of the investigation, law enforcement arranged a phone call between the daughter and Elifritz. During that short call, the daughter told her father that she told a friend about them "having sex" and the police wanted to speak to her. The father asked if anyone was there with her, and the daughter said "no." The father then said, "just say you don't know what [the friend] is talking about." He then asked if the daughter spoke to a teacher, and she said "no." Elifritz again told her to "act like you don't know what [the friend was] talking about."

The State charged Elifritz with incest, lascivious conduct with a minor, and two counts of third-degree sexual abuse. *See* Iowa Code §§ 726.2, 709.14, 709.4(1)(a), (1)(b)(1) (2014). The case proceeded to a jury trial, during which the daughter, her mother, the investigating officer, and the daughter's forensic interviewer testified. After the State rested, Elifritz's counsel obtained a directed verdict on one of the sexual abuse counts. Elifritz declined to testify, and he offered no other evidence in his defense. The jury deliberated and convicted him of the three remaining counts.[1]

Elifritz later applied for PCR. He claimed his counsel provided ineffective assistance by failing to present several key facts to the jury, not cross-examining the daughter, and not excluding the phone call between himself and the daughter. After a hearing on the application, which included testimony from Elifritz's trial

---

[1] Elifritz appealed his sentence and the State conceded that an enhancement, several fines, and a surcharge were improperly assessed. Our supreme court thus summarily vacated the offending portions of his sentence and left the remaining terms intact. *See State v. Elifritz*, No. 19-0390 (Aug. 30, 2019).

counsel, the PCR court denied relief. The court found that all of Elifritz's alleged failures by counsel were deemed reasonable trial strategy and thus Elifritz was not deprived of effective assistance of counsel. Elifritz now appeals.

## II. Analysis.

Our state and federal constitutions guarantee assistance of counsel for criminal defendants. See U.S. Const. amend. VI; Iowa Const. art. I, § 10. To realize that constitutional guarantee, counsel must provide those defendants with effective assistance. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984). If a criminal defendant is convicted and believes defense counsel's representation fell below the constitutional floor, the defendant may apply for postconviction relief. Iowa Code § 822.2(1)(a) (2020). To obtain that relief, an applicant must show "both that counsel breached an essential duty and that constitutional prejudice resulted." *Smith v. State*, 7 N.W.3d 723, 726 (Iowa 2024). Because ineffective-assistance claims implicate constitutional rights, our review is de novo. *Id.* at 725.

To show a breach, the applicant "must demonstrate the attorney performed below the standard demanded of a reasonably competent attorney." *Ledezma v. State*, 626 N.W.2d 134, 142 (Iowa 2001). We presume counsel performed competently and applicants must show more than "that trial strategy backfired or that another attorney would have prepared and tried the case somewhat differently." *State v. Tracy*, 482 N.W.2d 675, 679 (Iowa 1992) (citation omitted). Further, "strategic decisions made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Ledezma*, 626 N.W.2d at 143 (citation omitted). "[W]e must evaluate trial counsel's actions from the

perspective of when the decision was made—during the course of trial." *State v. Ondayog*, 722 N.W.2d 778, 785 (Iowa 2006).

To show prejudice, the applicant must "prove that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Tracy*, 482 N.W.2d at 680 (cleaned up). To meet this high bar, applicants must show more than "a mere impairment of the presentation of the defense." *Ledezma*, 626 N.W.2d at 143.

Here, Elifritz argues counsel breached an essential duty by not presenting seven material facts to the jury through cross-examination of the daughter and state witnesses. Although touching on these omissions, Elifritz ultimately takes a totality approach on appeal and argues that the overall impact of counsel's failure to present those facts amounted to "structural error"—specifically that "counsel [did] not place the prosecution's case against meaningful adversarial testing." *See Lado v. State*, 804 N.W.2d 248, 252 (Iowa 2011) (discussing three types of structural errors). We disagree.

In cases finding structural error, counsel's omissions went beyond mere tactical choices to downplay certain facts or avoid opening the door to others. *See, e.g.*, *id.* at 252–53 (finding structural error when PCR counsel was warned the application could be dismissed under Iowa Rule of Civil Procedure 1.944, the State moved to dismiss under that rule, and counsel never responded); *Villa Magana v. State*, 908 N.W.2d 255, 259–60 (Iowa 2018) (per curiam) (finding structural error when PCR case was dismissed under rule 1.944 due to counsel's inaction). Yet

here, the identified omissions stemmed from reasoned strategy, rather than a dereliction of duty to challenge the State's case.

For starters, Elifritz believes his counsel should have explored his cooperation and consent to a law enforcement interview and search of his home, which did not yield the "black case" of pornography described by the daughter, and that testing revealed no DNA on his or the daughter's clothing.[2]  However, the investigating officer's testimony at trial was brief, leaving counsel with a limited scope of cross-examination.  Moreover, trial counsel reasoned that minimal testimony was beneficial—the officer came across as conducting "only a cursory investigation" and it appeared the officer "jumped to a conclusion that Mr. Elifritz was guilty without much other investigation or evidence."  Walking the jury through other investigative steps could have added depth to the trial testimony, which gave the appearance of an otherwise shallow investigation.  Critically, exploring the investigation and Elifritz's cooperation also could have opened the door to what officers *did* find in Elifritz's home—his internet history, including websites relating to "incest with your daughter" and "having sex with your daughter."  The trial court had excluded that evidence, and counsel reasonably sought to keep that door closed.

Elifritz also disputes counsel's failure to cross-examine the daughter, who testified via closed circuit television.  However, counsel explained that the daughter did not "testify nearly as well as she had during her interviews" and in her

---

[2] Elifritz also alleges counsel should have discussed that law enforcement did not find any "condoms kept in the nightstand."  However, the daughter's trial testimony did not describe any condoms or their location.

deposition—"she left out most of the things that she" discussed during her interviews and deposition. Had counsel cross-examined her, that would have allowed the State to rehabilitate the daughter, which may have prompted her to disclose additional incidents of abuse. As counsel reasoned, "sometimes it's as much about what you're trying to prevent from coming in as what it is that did come in." That strategy proved worthwhile, as counsel successfully obtained a directed verdict on one count of sexual abuse based on the daughter's limited testimony.

We similarly find counsel's decision not to address the daughter's momentary recantation falls within the bounds of permissible strategy. Early in the investigation, the daughter had a physical examination scheduled. She briefly recanted—cancelling the examination—though that recantation was short-lived. Counsel explained that, had he explored that moment, it would have opened the door for the State's witness, a forensic interviewer, to testify and explain why victims may initially recant. Counsel believed the interviewer's testimony would have harmed Elifritz, and by avoiding the topic, he cabined the interviewer's unfavorable testimony at trial.

Finally, Elifritz believes his counsel should have prevented the phone call between himself and the daughter from being admitted. Prior to the criminal trial, counsel moved in limine to exclude the call on hearsay grounds, which was overruled. In this PCR action, Elifritz argues that it should have been excluded because the daughter lacked the mental capacity to consent to the phone call and the State could not argue otherwise because one of the State's sexual-abuse theories was that the daughter was "suffering from a mental defect or incapacity which precludes giving consent." *See* Iowa Code § 709.4(1)(b)(1). Like the PCR

court, we find this argument without merit. The trial information charged Elifritz with third-degree sexual abuse arising from either a lack of capacity to consent or the act being performed against the daughter's will. Thus, the State was in no way compelled to concede the daughter's capacity to consent. Further, counsel testified to researching the issue and finding no other basis to exclude the phone call. Nor did counsel believe the daughter lacked capacity to consent to the call based on his repeated observations of her. Because we agree any objection to the phone call based on the daughter's ability to consent would have been meritless, counsel did not breach any duty. *See State v. Bearse*, 748 N.W.2d 211, 215 (Iowa 2008) ("Counsel cannot fail to perform an essential duty by merely failing to make a meritless objection.").[3]

Because all of Elifritz's allegations stem from his trial counsel's reasoned, strategic decisions, there was no breach of duty. We therefore affirm denial of postconviction relief.

**AFFIRMED.**

---

[3] Elifritz also points to counsel's purported failure to subpoena the daughter's mental-health counseling records. Yet the PCR court's ruling does not address this issue and Elifritz's brief on appeal mentions it only in passing. Thus, we find this issue is not properly before us. *See State v. Louwrens*, 792 N.W.2d 649, 650 n.1 (Iowa 2010).